Thank you, Your Honor. So now that you have the benefit of hearing the first part of the case, this is not the merits argument of the underlying case. This is more procedural in nature. State put is an automatic injunction that allows some consistency in a student's program when there's an ongoing dispute. And we've had ongoing disputes with the student for many years. Counsel, if I may ask you, it seemed to me that your argument essentially was that the equitable decision to award reimbursement automatically has to translate into entitlement to a state put order at the private school placement. And I'm not sure that's correct. Is that your position? And if so, what is your best authority for that? So, Your Honor, no. I think that's the way ALJ Dalton ultimately defined it in a subsequent order. Now, we had three different state put decisions. We had... No, no. Wait, wait. I'm not sure I understood your answer. Is it your position that the equitable is entitled to a state put order at that placement? If that private placement is defined as appropriate, which is precisely the word that was used by ALJ Dalton. So your answer to my question is yes. Yes, if it's defined as appropriate and if it's the last implemented or ordered placement, which in student circumstance... I don't think you're really answering the question. This is a very specific question. Okay, sure. Did you need another ruling or are you telling Judge Graber, because I think you're asking this differently, are you telling Judge Graber that you think you got the ruling the first time that you needed? Correct. As opposed to what she's asking you? Right. We did get the ruling that defined students' placement, the equitable remedy that was ordered as state put from our perspective and from the perspective of two other ALJs. Okay. So then the answer to her question would be no. She asked you whether or not is it your position that the equitable remedy, is that sufficient for state put? And I think your answer to that is no. Okay. Now that I better understand the question, my apologies. So you're not saying... If he asked it better than I did, that's fine. Okay. My apologies. So when I see a remedy, I see equity as well. But I apologize if I'm misunderstanding. Let's do that because we're really talking about terms of art. Really just talking about... So the answer is it is appropriate from our perspective, meaning we would define it as FAPE as two ALJs did. So no. Yeah. Counsel, you got a ruling from ALJ Dalton, an equitable ruling. And what I'm trying to figure out is whether you think that first ruling was indeed enough to qualify as a state put, that it had everything in it that you need. Correct. The answer is yes. It does qualify. That's very helpful. Clarifying. But ALJ Dalton, of course, didn't think so. She didn't think so. So tell me why she's wrong, please. But she also used the word appropriate. Okay. And then she came up... In the process of telling you why she thought she hadn't reached state put. Right. She said that she didn't... Appropriate from her perspective didn't mean FAPE, which FAPE is defined as a free appropriate public education, reasonably calculated to confer an educational benefit to the student under Andrew F. So we saw appropriate as two other ALJs agreed with us saying, yes, appropriate means FAPE. It means that is what I'm ordering, especially because she didn't find that any of the IEPs were appropriate. Therefore, none of them could be implemented. So what do you end up with? You end up with a limbo. That's a different problem. Right. Whether or not you need another ruling as though this were maybe premature because you don't have all the components that you need for state put. But we're in a tough spot here because the same ALJ who entered that order says that order didn't reach state put. Okay. That's... We have that unequivocally. Okay. That's not what she intended. You're saying really she did mean it. I mean, the ALJ, Dalton, had what was required in there. The fact that she defined it as appropriate is my point. I got that point. So using that word. So whether she meant it, didn't mean it, in hindsight decided, hey, that's not really where I want to... I'm not trying to say that you were wrong to have read it that way and to have had that misunderstanding because a couple of other ALJs agreed with you. Yes. Point is, we are where we are now. Understood. And ALJ number one, Dalton, says that's not what it meant. Okay. Okay. So at this point, are you able to go back and get the ruling that you need? Is there something that prevents you from going back since ALJ Dalton says that that issue wasn't reached? There's nothing that would prevent you outside of going through another due process hearing. You could do that now. You can, and they did, and I was in counsel on those subsequent cases. No, but at the time that complaint was filed, that second due process complaint, I don't think anybody realized there was... It seems like you and a couple of other ALJs were operating under an assumption. Again, this isn't about finger pointing. I'm just trying to get through the swamp here. Get through the morass. I don't mean that pejoratively, but it's a tough record. I understand, Your Honor. Thank you. So you are where you are, and it sounds like procedurally you could go back now and file another due process complaint and seek this ruling that we apparently don't have? Which they did. No. Counsel, is that a yes or no? Yes. You can. Yes, Your Honor. You could do that, but it would be a delay. It would be unfortunate. But that is attainable? You can, Your Honor. That is absolutely attainable. Okay. Tell me why that should not happen. It's not that it shouldn't happen. It's that you're still guaranteed this automatic injunction. So, you know, outside of the position, the procedural position... The child didn't have to be interrupted, right? She did stay put, in fact. She did at parent's expense. I understand that. That's why we're here. We're talking about the expense, because you didn't have, apparently, A.L.J. Dalton says you don't have a state order. You didn't have one. You just thought you had one. That's correct. So A.L.J. Dalton ultimately decided that's not what she meant. But she also came up with an interesting, had you pled the issue as Prentiss's fape, which we never plead remedies as fape, necessarily. That's, you know, almost never. You know, and that's something that you wouldn't necessarily have to do. So the fact that she came up with that, you know, very late in the game, you know, in the process of this litigation was surprising to us, because she was very clear from our perspective, humbly reading her decision, that she agreed with us by finding that no other IEP was appropriate. So that's the concern, is you present this other problem. So A.L.J. Dalton, if you think that we should have pled that Prentiss, whether Prentiss was a fape, and then you could have decided that issue, and you may have, she didn't even say what she would have decided, but maybe she would have decided in our favor. But then you leave us with no IEPs that you decide are fape. Where do we go from here? Well, that's why I'm asking the question. Could you go back and seek a more fulsome, explicit stay-put order? I fully appreciate you think you already had one, but apparently not. So if that's the way we go, if we decide that this did indeed fall short of a stay-put, you're not barred from going back to seek one now. Correct. And I had a related question. Without naming the school, but we talked about Prentiss a lot. Is your client actually asking to be stay-put at Prentiss or at a different school, correct? Well, eventually the client's going to age out of Prentiss. It is true Prentiss doesn't go all the way through high school, even though they have authorization to present high school curriculum if they decide to add more classes or add more grades. State of California certifies them as a non-public school. But eventually she will age out of that program and end up elsewhere. It's hard to figure this out from the record, but by some calculation that I did that's probably wrong, it seems like student is now 17? That's correct, Your Honor. Okay. That kind of follows up on my question, like just in terms of do we have a live controversy here? Is there a school that she would be stay-put at, I guess, is what I'm asking. Well, it would be a comparable non-public school for her grade level. And just like in a district circumstance where the student stays in the district, they may get comparable programming. In some cases, if the litigation as it has in this matter has gone on for years, they may get comparable programming if the parties can't agree. And that was a very practical question that Judge Carter had asked, like, where is she going to school, you know? Eventually parents, you know, have to make decisions over the years. Like, do you keep them there? Do you put them somewhere else? But in answer, you know, I hope I answered your question, Your Honor. Yes, they make some decisions. Parents incurred the cost. They were never reimbursed. But in terms of stay-put, so there is a school, without saying which one it is, that there is a school that your client is hoping to be basically allowed to attend and requiring her to attend based on... This is not a moot question. That is not a moot question, Your Honor. There is a school. That school was PREDIS. They did incur those costs. They were not reimbursed. Counsel, I understand that you think the first stay-put order... The first order was a stay-put. Okay, so... Second one as well, Your Honor. Okay. Judge Carter didn't think so. And he was looking at Capistrano and also Huerta. And that would have been Judge Breyer, both of whom I think were very troubled by the very... They called it the sweeping language in Capistrano. But... Or Judge Breyer sure was in Huerta. But in Capistrano, that was a new student coming into the district who'd never been in the district. And according to our opinion, the parents unilaterally selected quite an expensive school. And I think very importantly, the district offer was later determined to have been a FAPE. It's a very different fact pattern than what we had here. Right. And I think that in retrospect, perhaps Judge Dalton, looking back, felt like she had to explain why she used the word appropriate. And that's what we hung our hats on in the motion for stay put, is if you say appropriate, that is a term of art in our field. It means... I appreciate that. Yeah. And again, I'm not Monday morning quarterbacking. It's sort of painful to read this record and see how this mistake was made, miscommunication was made. Yes. But it is what it is. Do you think that Judge Carter was incorrect in thinking that he was bound by Capistrano? Sweeping language, all right. Yeah. I mean, I think Judge Carter understood and respected, as I'm sure your honors do, the person who wrote the decision and her explanation for why that decision was why it was. So I think that was the authority that Judge Carter could find to support that. Right. And so, again, just not to... I want to make sure I'm not missing something. I've read Capistrano. Judge Carter had read Capistrano. There's the Huerta case before. And all three of these distinguished jurists are looking at a delta between equitable, the equitable finding that your clients obtained expressly, and a state court order. So do you think they're missing something? Because we're a three-judge panel, right? We're bound by this. No, I understand, your honors. So with respect to... I think the only difference between the two is, again, fake versus appropriate. Okay. I don't think that he was incorrect in looking at that for guidance, necessarily. I wish I could say that with... I think there was a lot of language that could have been different had ALJ Dalton meant that to be solely an equitable remedy and not appropriate or not fake. At this point, since you're not telling me that Judge Carter misread Capistrano or Huerta, I think what you're telling me is, in order for us to rule your way on this issue, we would have to say that ALJ Dalton's order means something different than what ALJ Dalton's order means. That is 100% accurate, your honor. It means once you present appropriate, whether you meant it or not, that is what it means in our field. Appropriate means fake. If you meant to say it was an equitable remedy, then you must expressly indicate that in the underlying merits decision. Am I right that you didn't have this... I'm going to say correction, clarification of the ALJ Dalton's order at the time you filed the second due process complaint? That is correct, your honor. Yes. Thank you. Judge Owens, do you have any other questions for Judge Graber? I don't. I don't think we do. Thank you, your honors. Thank you. May it please the court, Daniel Gonzalez again on behalf of Irvine Unified School District. I think in hearing the questioning, I think the court has identified this is a relatively straightforward appeal on a case law that's already been established. I saw a lot of questions regarding the use of the word appropriate, and once you use the word appropriate in this field, then that must mean a finding of fake, and that is just not the case. Burlington talks about what the criteria is for providing equitable reimbursement to the parent as part of a due process hearing, and that includes both a finding that the district failed to provide a free appropriate public education, and also that the proposed private placement is appropriate in the context of providing some educational benefit. Now, as has already been highlighted by this court, that doesn't rise to the same level of free appropriate public education that districts have, or public school districts have to meet, but instead it's providing some special education services and support so that it's plausible that a student could receive a special education in that particular setting, and that case law was already established when the initial due process hearing was going on, so the case law is relatively straightforward here. The only other grounds on which you could arguably challenge this is saying that A.L.J. Dalton tried to, or intended to make this state put that she found it to be, to meet the criteria of free appropriate public education, and the case law talks about context, in what context was this found to be appropriate, and in this particular case, it's described as appropriate for purpose of reimbursement. It's the award that's given to the student in paragraphs four and five of that particular, and the case, and the opinion is very clear that this is for reimbursement purposes, and even puts a time limit on it for the 2018-29 school year, so it bookends it, and doesn't give any sort of contrary guidance as to this being ongoing state put placement. But why would there be any, since this student did remain for the next year, are you suggesting that the parents need more than what I just asked about? They don't have a state put order if we rule in your favor, but what about for the following year? Do you think they also don't have what they need for equitable compensation for the next school year? Correct, Your Honor. So as I mentioned in the test I just described, both a finding that the IEP that's offered by the school district does not offer free appropriate public education. In this particular case, the school district had made another IEP offer for June 2019, in June 2019 for the following school year. So this was very similar to what had happened initially. The parents could have disagreed with that particular IEP, placed their child in private school, and then filed a due process in order to seek reimbursement from the district. That's no different than what happened in the original due process hearing in this particular case. And initially parents did seek that out. They filed the second due process hearing complaint to challenge the June 2019 IEP. They immediately dismissed that after continuances were denied. They filed a third IEP. And again, when continuances were denied, they immediately dismissed that as well. The third IEP, do you mean third request for due process hearing? Third request for due process, correct. And then what happened to that one? They dismissed that one as well. So once continuances to, once the ALJ denied their- Those, were those dismissals made prior to the time there was a clarification of what ALJ Dalton's order meant? So ALJ Dalton actually- It's very, because it would be very different if the parents are operating under the assumption, which seemed to be pretty reasonable, that they had a state court when in fact they didn't. I'm very concerned about the district's position, if it is the district's position, that they would have to do this all over again for 2019. Sure. So ALJ Dalton actually, yes, the short answer to that is yes, Your Honor. The last third process and second state put request was made on December 11th, 2019. That's when the parents filed the request for due process. And on December 24th, 2019, they filed the second motion for state put requests. The ALJ Dalton actually denied the state put request on March 9th, 2020. And by then, Irvine had already appealed the state put decisions because they felt the case law was very, it felt the case law was very clear in this case that ALJ Dalton never intended to, never intended to make this a state put placement. And it doesn't really make sense if you look at the case law. State put is so that school districts, when there's a dispute, won't remove students from public placements and move them into private, only special ed placement. Warehousing is the language that's used in particular matter. Well, it's not a one-way street. It's also the case if the parents and the district agree and there's a private placement, then that's a state put. Surely you don't contest that. Correct, Your Honor. And you're right. And if the district had offered a private placement because it felt it could not educate that student, that would also be the last agreed upon and implemented placement. It would qualify for state put. But that was not the case here. In this particular case, or the appellant is arguing, look, we found this to be appropriate under the more relaxed standard of whether this qualifies for reimbursement under Burlington. And now we'd like that to be state put going forward. But that requires this two-pronged process. And it's much more, sorry, it requires an actual finding that that placement is FAPE. And that comes from a concern that it's one thing for the ALJ to find that the public school districts offer a FAPE. It doesn't actually provide FAPE. And then find that the private placement provides some benefit. And so they're going to award that as tuition reimbursement going forward. But there's also a real concern about placing a student in a placement that may not rise to the level of FAPE. So the student continues at that particular placement and does not receive a FAPE. And if there are any questions, Your Honor, I'm more than happy to answer them. One quick one. Do you agree with opposing counsel that let's assume you're right? Let's assume we affirm in this case that they can go back and try to reopen and try to get a state put, that nothing's preventing them from doing that? The district continues to make offers of free appropriate public education at any point the parents can challenge those offers of free appropriate public education. I don't think you're understanding the question. The question is that, is there anything that would prevent the other side from seeking the state put? Let's just say you're right that the early order was not a state put. Is there anything that procedurally bars them later next week from trying to seek that state put? Well, Your Honor, I'm a little confused by the question because there would have to be an open due process hearing in which they could seek that state put. There has to be a proceeding ongoing, as I understand it. It can't be a freestanding item. So can they go initiate a new, that was my question a half an hour ago. Sure. Can they go initiate a new due process? And they did. And then they dismiss them. Right. At the time they dismiss them, as you've just reminded us of the chronology, they didn't yet know there was going to be this clarification, my word, clarification of ALJ Dalton's ruling. Right. So there isn't an ongoing proceeding in my hypothetical, but I'm asking, and I don't think there's an ongoing proceeding, although there have been many of them, at this point, since if we were to rule in your favor and rule that the equitable ruling does not rise to the level of a state put order per capistrano, can they initiate a new due process hearing to try to seek that, close that gap and get an actual state put order? Your Honor, they're free to file a challenge and you have due process hearings up to the two-year statute of limitations going back. So two years from today, if they wanted to, any IEP, they could challenge that. And in that, in the context of the challenging an IEP, could file a request for a state put order, but they would be limited to that time period. Anything further? And if I could just clarify quickly, I know one of the things you mentioned is had ALJ Dalton clarified. I think her decision is very clear in the context of which she made this decision. The reason that's a hard argument for you to make is that two other ALJs disagreed with you. Correct, Your Honor. And we took the position that they misinterpreted the law. And so it's very clear from the applicable law and the way that ALJ Dalton actually wrote her opinion that she gave that or offered reimbursement, not placement, as an equitable remedy in this particular case. But I just wanted to highlight because I know you asked about the timing of ALJ Dalton's state put order. And although that was in March 9th, 2020, on December 6th, 2019, Irvine had already appealed the first state put order. So I'd already given notice that Irvine thought this was improper and that it should be overturned. Yes. Thank you. I appreciate it. And thank you for the clarification. Thank you both for your very helpful arguments. We'll take this matter under advisement. Oh, wait. You still have two more minutes, right? Yes. I beg your pardon. See, this is why we need Judge Graber. Clock police. Come right on up. You have two more minutes. So going back, Your Honor, I just wanted to close my arguments by simply saying that the student has been in an ongoing sort of limbo situation for a number of years and regardless of whether the... There are a number of questions from Your Honors about whether a student had the ability to challenge an IEP. Because we've had so many appeals, and as opposing counsel just mentioned, they had already filed an appeal. We were in litigation the entire time, whether it was in district court or whether it was with the Office of Administrative Hearings. It is the pendency of a proceeding. It doesn't have to be an administrative proceeding. It could be a district court proceeding. Stay put still applies to that. Stay put applies now. Well, that's why I asked a very open-ended question. And I think Judge Owens asked it as well. Can you go back now and get this? If we rule that the equitable ruling that Judge A.L.J. Dalton entered doesn't satisfy, doesn't rise the level of stay put, are you able to go back and seek that ruling now? You can in a number of ways, Your Honor. I mean, theoretically, you can. Even with the district court, if it was still, perhaps even with this court, through a different process, we don't normally do it that way. We typically get administrative stay put decisions. But yes, the answer is unequivocally yes. And because the litigation's been pending for so long in a number of different avenues. Thank you, Your Honor. Thank you. Thank you all. We'll take that case under advisement and go on to the last case on the calendar unless anyone wants a break.
judges: GRABER, CHRISTEN, OWENS